THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
CESAR CORREA, Defendant-Appellee.

First District (4th Division)   No. 83—765

Opinion filed May 3, 1984.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Louis F. Stalzer, Assistant State's Attorneys, of counsel), for the People.

Consuelo E. Bedoya, of Chicago (Dennis A. McKinney, Jr., of counsel), for appellee.

JUSTICE ROMITI delivered the opinion of the court:

The State appeals from the judgment of the circuit court of Cook County which granted the petition of César Correa (petitioner) under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, par. 122–1 *et seq.*) to vacate his guilty plea to narcotic charges and for a new trial. The trial court granted the petition because it determined that the petitioner's plea had been involuntarily entered as a result of ineffective assistance of counsel when his trial attorney erroneously represented to him that his conviction would not render him subject to deportation from the United States because his wife was a United States citizen. The State's appeal raises two issues: (1) whether the petitioner was entitled to relief under the Act even though his petition was filed after his release from prison on the charges and (2) whether the petitioner's trial attorney's erroneous representation was sufficient grounds to grant the post-conviction petition.

We conclude that the Act permits the relief sought and that the petitioner's trial counsel's erroneous advice constituted ineffective assistance of counsel which rendered his plea involuntary. Accordingly,

we affirm the trial court's judgment granting the post-conviction relief sought.

On June 29, 1981, the petitioner, a non-United States citizen, pleaded guilty to three counts of delivery of a controlled substance (cocaine) and was sentenced to three concurrent terms of three years' incarceration in the Illinois State Penitentiary. He was released from prison on August 13, 1982, and shortly thereafter was informed by the United States Immigration and Naturalization Service that deportation proceedings would be instituted against him because of his Illinois drug convictions. On December 27, 1982, he filed a petition under the Post-Conviction Hearing Act (the Act) (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*), alleging that his guilty plea had not been voluntarily entered because his trial counsel had erroneously informed him that deportation proceedings could not be brought against him if he pleaded guilty to the drug charges.

The State first moved to dismiss the petition on the grounds that the Act permits relief only if the petition is filed while the defendant is imprisoned or serving a term of probation. After a hearing on this issue, the court denied the motion.

At the post-conviction hearing the petitioner's trial counsel, Cyrus Yonan, gave testimony which corroborated petitioner's claim that Yonan had told him a guilty plea could not lead to deportation proceedings. Specifically, Yonan testified that in a conference with his client regarding the propriety of pleading guilty, the petitioner asked what effect this would have on his status as an alien. Yonan initially responded that he "did not know what immigration would do in reference to his status." Yonan added, however, that he had represented "a lot of people who had been aliens, and none of them had been deported." The petitioner then told Yonan that his wife was a United States citizen. Yonan related that, "I then said to him, if your wife is an American citizen, then the plea of guilty would not affect your status. You probably would be picking up her status as an American citizen. And I felt at that time in point his position in the United States would not be jeopardized."

On cross-examination, Yonan maintained that he had so informed the petitioner:

"Q. Did you tell him definitively he wouldn't be deported?

A. I said don't worry about it. Nothing to worry about.

Q. Did you check the law?

A. No, I didn't.

Q. You said before you didn't know much about immigration?

A. When he told me his wife was an American citizen, I felt on that basis it would not affect him.

Q. But you didn't tell him definitely he would not be deported?

A. I told him you have nothing to worry about. I am almost positive.

Q. That is speculative.

MR. BLOOM: Objection

THE WITNESS: Whatever it was, I told him I felt in my own heart he had nothing to worry about."

The trial court determined that "[t]he question before me is whether this is a voluntary plea, whether there was incompetency of counsel in misadvising his client." The court noted that "Mr. Yonan was frank with his client. He said he wasn't familiar with the immigration laws, but he vouched an opinion about other matters he had been involved in. He also expressed an opinion that *** aliens [being] married to American citizens somehow relieves the aliens of the penalty of the law." The trial court concluded that "in this case, the defendant has served his sentence. He has paid the penalty provided by Illinois law. However, he is now confronted with the federal proceedings which he thought when he pled guilty would not arise. Therefore I will have to conclude his plea was not voluntary." The court vacated the defendant's guilty plea and his conviction, and set the case for a new trial upon defendant's waiver of a reading of the indictment. This appeal by the State followed.

## I

The State attempts to characterize the trial court's ruling that the Act permits a defendant to seek post-conviction relief subsequent to his release from imprisonment as an unsupported expansion of the Act. It is the State's contention that the Act and its jurisprudential interpretation provide for relief only where the petitioner is serving his term of imprisonment or probation at the time his petition is filed.

Section 122—1 of the Act (Ill. Rev. Stat. 1981, ch. 38, par. 122—1) provides in relevant part:

"Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article."

The State argues that the term "imprisoned in the penitentiary" should be construed as a limitation on a defendant's right to seek re-

lief, so that under the Act this remedy may be pursued only while the individual is actually serving his *term* of sentence. We disagree.

■ The Act permits a petition for post-conviction relief to be filed while the individual is serving a term of sentence, be it incarceration or probation. (Ill. Rev. Stat. 1981, ch. 38, par. 122—1; see *People v. Montes* (1980), 90 Ill. App. 3d 355, 412 N.E.2d 1363.) Parole is an integral part of the sentence (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1), having "consequences in the nature of control over the defendant's conduct." (*People v. Placek* (1976), 43 Ill. App. 3d 818, 819, 357 N.E.2d 660.) As a result, a post-conviction petition may be filed and the hearing thereon held while the individual is released but on parole from his conviction. (*People v. Placek* (1976), 43 Ill. App. 3d 818, 819, 357 N.E.2d 660; *People v. Smalley* (1975), 33 Ill. App. 3d 677, 678, 338 N.E.2d 193.) The record reveals that the petitioner here was on parole from his narcotics convictions at the time he filed his petition.

Furthermore, the Illinois Supreme Court has determined that the legislature enacted the term "imprisoned in the penitentiary" in order to permit "persons convicted of serious crime, that is, crimes punishable by imprisonment in the penitentiary, to avail themselves of the provisions of this remedial statute." (*People v. Davis* (1973), 54 Ill. 2d 494, 496, 298 N.E.2d 161; see also *People v. Warr* (1973), 54 Ill. 2d 487, 298 N.E.2d 164 (misdemeanants entitled to post-conviction relief similar to that provided in Act).) Thus it follows, as the court said in *People ex rel. Palmer v. Twomey* (1973), 53 Ill. 2d 479, 484, 292 N.E.2d 379, "that his term of imprisonment has ended does not of itself serve to bar the institution of post-conviction proceedings." In fact, section 122—1 of the Act specifically provides that a petition may be filed within 20 years after rendition of final judgment. (Ill. Rev. Stat. 1981, ch. 38, par. 122—1.) The defendant's completion of his sentence does not automatically bar the court's consideration of the merits of his petition so long as it is filed within the time period specified in the Act applicable at the time of final judgment of the defendant's guilt. (*People v. Wallace* (1972), 8 Ill. App. 3d 587, 290 N.E.2d 6; see also *People v. Lynn* (1984), 102 Ill. 2d 267 (completion of sentence does not render moot challenge of conviction itself since nullification of a sentence may have important consequences to a defendant).) We believe, therefore, that the term "imprisoned in the penitentiary" denominates the kinds of convictions from which post-conviction relief may be sought, rather than the time period in which the petition must be filed.

For the reasons set forth above, we conclude that the trial court's

denial of the State's motion to dismiss the petition was appropriate.

## II

The State contends that the trial court committed reversible error by failing to determine whether defense counsel's erroneous advice constituted ineffective assistance of counsel. In addition, the State maintains that the facts in this cause do not support a conclusion that the conduct of petitioner's trial counsel amounted to incompetency of counsel.

## A

■ We find unpersuasive the State's contention that the trial court applied the incorrect standard. Initially it must be noted that the trial court did essentially conclude that the conduct of petitioner's trial counsel amounted to ineffective assistance of counsel. Moreover, the court's consideration of the voluntariness of petitioner's guilty plea was wholly appropriate. Although incompetence of counsel is the proper conceptual framework by which to resolve whether a defendant should be granted post-conviction relief because of his defense attorney's misrepresentation or misconduct during the defendant's decision to plead guilty (*People v. Owsley* (1978), 66 Ill. App. 3d 234, 383 N.E.2d 271), close scrutiny of this general framework reveals that a consideration of the voluntariness of the plea is an integral part of that analysis.

Generally, ineffective assistance of counsel will be found where the defendant's attorney was actually incompetent and this incompetence caused the defendant substantial prejudice without which the outcome would have been different. (*People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.) In our view, in the context of an attorney's representation of a defendant during the entry of a guilty plea, the substantial prejudice which must be shown is essentially whether the defendant's plea was involuntary. The defendant's plea must have been made in reasonable reliance upon the attorney's incompetence and it is this reliance which must have caused the plea to be involuntary. *People v. Burton* (1970), 46 Ill. 2d 135, 138, 262 N.E.2d 917.

The case of *People v. Owsley* (1978), 66 Ill. App. 3d 234, 383 N.E.2d 271, upon which the State relies in support of its claim that voluntariness of the plea should not be an issue, does not present a contrary view. Rather, *Owsley* is illustrative that the appropriate conceptual framework implicitly includes an analysis of whether the defendant's plea was involuntary. In *Owsley* the trial court dismissed

without a hearing the defendant's post-conviction petition requesting vacation of her guilty plea and a new trial on the grounds that her trial counsel misrepresented to her during a conference regarding plea negotiations the minimum time in which she would become eligible for parole, work release, and weekend furlough. In reviewing this judgment, the appellate court first determined that the applicable standard was whether the petitioner had received ineffective assistance of counsel in entering her plea of guilty rather than whether the plea had been involuntarily entered. The court went on to observe, nevertheless, that a plea of guilty is constitutionally valid only when it is knowingly and intelligently made, and that a defendant can decide to plead guilty only after he has learned when eligibility for parole or other "freedom-related" benefits will accrue. The court then concluded that a hearing was appropriate in order to determine the validity of the petitioner's allegations that her trial counsel had misinformed her, because these contentions, as stated in her petition and supporting affidavit, were not palpably incredible and if proven could constitute ineffective assistance of counsel.

Deportation is without question a significant collateral consequence of a criminal conviction likened to "the equivalent of banishment" (*Fong Haw Tan v. Phelan* (1948), 333 U.S. 6, 10, 92 L. Ed. 433, 436, 68 S. Ct. 374, 376), and the "savage penalty" of "a life sentence of exile" (*Jordan v. De George* (1951), 341 U.S. 223, 243, 95 L. Ed. 886, 898, 71 S. Ct. 703, 714 (Jackson, J. dissenting)), of which an alien defendant should be advised by his counsel prior to entry of his plea. (*Commonwealth v. Wellington* (1982), 305 Pa. Super. 24, 451 A.2d 223; *Edwards v. State* (Fla. App. 1981), 393 So. 2d 597.) This obligation is imposed upon defense counsel because he "is in a much better position to ascertain the personal circumstances of his client so as to determine what indirect consequences the guilty plea may trigger." (*Michel v. United States* (2d Cir. 1974), 507 F.2d 461, 466.) Thus, where defense counsel has unequivocally represented to his client that such plea will not result in his deportation and the defendant has relied upon this patently erroneous advice in deciding to plead guilty, post-conviction relief is appropriate to permit the defendant to plead anew and take full advantage of his right to a trial wherein his guilt must be proven beyond a reasonable doubt. See *United States v. Parrino* (2d Cir. 1954), 212 F.2d 919, 922, *cert. denied* (1954), 348 U.S. 840, 99 L. Ed. 663, 75 S. Ct. 46 (Frank, J. dissenting); see also *United States v. Briscoe* (D.C. Cir. 1970), 432 F.2d 1351; *United States v. Shapiro* (7th Cir. 1955), 222 F.2d 836.

## B

■ The State also disputes the trial court's judgment on the grounds that the evidence adduced at the post-conviction hearing was insufficient to prove ineffective assistance of counsel. We disagree.

After considering the evidence presented by the petitioner and arguments presented by both parties, the trial court concluded that the petitioner had relied upon his trial counsel's unequivocal but erroneous advice that his marriage to a United States citizen would bar his deportation from this country in spite of a narcotics conviction. Our standard of review is whether this conclusion was manifestly erroneous. *People v. Bracey* (1972), 51 Ill. 2d 514, 517, 283 N.E.2d 685; *People v. Corder* (1982), 103 Ill. App. 3d 434, 436, 431 N.E.2d 701.

It stands as undisputed that the representations made by the petitioner's defense counsel were incorrect. Deportation shall be imposed where the individual has been convicted of, *inter alia,* "any law or regulation governing or controlling the *** exchange [or] *** giving away *** of *** coca leaves." (8 U.S.C. sec. 1251(a)(11) (1982).) That the individual convicted of such offense is married to a United States citizen does not automatically bar his deportation. (See 8 U.S.C. sec. 1182 (1982); see also *De Figueroa v. Immigration & Naturalization Service* (7th Cir. 1974), 501 F.2d 191, 195.) The State maintains that the statements of petitioner's trial counsel were mere estimates rather than unequivocal representations, such that the petitioner could not have reasonably relied thereon in entering his plea. We cannot conclude, however, that the trial court's determination to the contrary was manifestly erroneous.

The trial court concluded that although petitioner's attorney was initially unsure of the conviction's effect on his client's immigration status, he became certain that there would be no such adverse consequence when informed that petitioner was married to a United States citizen. The record supports the trial court's conclusion that these latter statements were not merely estimates of the likelihood that petitioner would not be deported, but rather were more in the nature of unequivocal representations which created in petitioner a firm expectation which was subsequently unfulfilled. We believe this was sufficient to grant the relief requested.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

LINN, P.J., and JIGANTI, J., concur.