**UNITED STATES of America**

v.

**Sabino DEL ROSARIO, Appellant.**

**No. 88–3175.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 11, 1989.

Decided April 24, 1990.

Peter H. Meyers, appointed by this Court, for appellant.

Steven W. Pelak, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Thomas J. Tourish, Jr., Asst. U.S. Attys., were on the brief, for appellee.

Before MIKVA, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge MIKVA.

SENTELLE, Circuit Judge:

Sabino Del Rosario, a citizen of the Dominican Republic, appeals from the denial of his motion under Fed.R.Crim.P. 32(d) and 28 U.S.C. § 2255 to withdraw his plea of guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Del Rosario advances two arguments for the proposition that he should be allowed to withdraw his plea. First, he claims that he received ineffective assistance of counsel because his attorney did not advise him that a guilty plea would likely result in his deportation. Second, he asserts that during the plea hearing the court committed violations of Fed.R. Crim.P. 11 by failing to inform him of the elements of the crime to which he pleaded guilty and by failing to inform him of the special parole term applicable to this offense.

We find that the failure of Del Rosario's lawyer to inform him of the likelihood of deportation, as a collateral consequence to a guilty plea, does not constitute representation below an objective standard of reasonableness and that the other alleged errors do not amount to a "complete miscarriage of justice." Consequently, we affirm the District Court's denial of Del Rosario's motion.

## I. BACKGROUND

On September 26, 1986, the Metropolitan Police executed a search warrant for the apartment occupied by Del Rosario and at least one other person. Inside the apartment they found large amounts of cocaine and cash and the tools of distribution.

On February 26, 1987, Del Rosario pleaded guilty to one count of possession of cocaine with the intent to distribute. 21 U.S.C. § 841(a)(1). At the plea hearing the District Judge inquired of Del Rosario to determine whether he made the plea voluntarily. The Judge read the indictment, the prosecutor stated the facts she intended to present, and Del Rosario indicated that he did not disagree with anything he had heard. On March 12, 1987, the District Court held a sentencing hearing and entered judgment imposing a prison term of four to twelve months followed by a three-year sentence of special parole. At neither hearing did the Court advise Del Rosario that deportation would be a consequence of the conviction or that the sentence would or could include a term of special parole. At the sentencing hearing the prosecutor and Del Rosario's attorney engaged in some inconclusive discussion concerning deportation, but neither purported to know definitively the deportation-related consequences of the plea.

Del Rosario in fact served a ten-month prison term. Thereafter, the Immigration and Naturalization Service moved to deport him under 8 U.S.C. § 1251(a)(11). Del Rosario *pro se* filed a "Motion for Court–Appointed Counsel, to Withdraw Guilty Plea, and to Vacate Sentence." After reviewing the *pro se* filing, the District Court appointed counsel for Del Rosario, who filed on his behalf a motion to withdraw the plea and vacate the sentence under Fed.R.Crim.P. 32(d) and 28 U.S.C. § 2255. After an evidentiary hearing, the District Court concluded that Del Rosario's court-appointed attorney at the time of the plea and sentencing had not provided effective assistance of counsel, but that Del Rosario had demonstrated no prejudice resulting from his trial counsel's failure. Therefore, the District Court afforded no relief.

## II. ANALYSIS

A. *The Ineffective Assistance of Counsel Claim*

■ Reviewing this case in the light of controlling authorities, we conclude that

the District Court not only did not err in finding that Del Rosario had demonstrated no prejudice, but also that Del Rosario was not deprived of effective assistance of counsel at all. The proper analysis of a Sixth Amendment claim for ineffective assistance of counsel begins with *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that case, the Supreme Court established that, in order to show sufficiently defective performance by counsel to constitute a denial of the Sixth Amendment guarantee, a convicted defendant must establish two components: (1) "that counsel's performance was deficient," involving "errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment," *id.* at 687, 104 S.Ct. at 2064; and (2) "that the deficient performance prejudiced the defendant," established by a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court established the applicability of the *Strickland* test to the guilty plea situation. First, the Court noted the existing case law that the voluntariness of the plea of a defendant represented by counsel during the plea process "depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56, 106 S.Ct. at 369 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). The Court then held that the two-pronged *Strickland* test previously applied in trial and trial-type situations was equally applicable to an attack on the voluntariness of a guilty plea, and further instructed that the second, or "prejudice" prong required the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370.

While *Hill* did not involve a failure to inform the defendant of deportation consequences of his plea, it is not only controlling as to the generally applicable rule of law, but also determinative of the applica-

tion of that rule to the present facts. In *Hill*, the allegation was that counsel had offered erroneous advice as to a collateral consequence of the plea, far less remote than the collateral consequence of deportation. There, the petitioner alleged that his counsel incorrectly advised him as to his parole eligibility date, but failed to allege that but for that advice "he would have pleaded not guilty and insisted on going to trial." *Id.* at 60, 106 S.Ct. at 371. The Court held that the habeas petitioner could not show prejudice without proving that the incorrect advice had such an effect on his plea decision, and noted the absence of any special circumstances that would have supported placing a "particular emphasis" on the parole eligibility date in the making of the plea decision. *Id.* In the present case, not only is there no evidence supporting a conclusion that Del Rosario would have placed any particular emphasis on the danger of deportation at the time of the plea decision, but such evidence as the transcript of the criminal proceedings does contain is to the contrary.

The sentencing transcript discloses that a colloquy occurred in defendant's presence among the trial judge, the prosecutor, and Del Rosario's court-appointed counsel concerning the possible deportation consequences of the plea. That colloquy was inconclusive as to the exact nature of those consequences but clearly revealed that deportation was a distinct possibility though none of the three purported to know the exact likelihood of its imposition. Del Rosario did not make, nor does he now claim he was prevented from making, any assertion that this affected his decision, though he was offered and exercised his right of allocution. The statement on allocution occupies a single paragraph in the transcript and consists solely of his acknowledgement that he had "made a mistake" and an expression of his intent to do better in the future. It contains no reference to the deportation possibility whatsoever.

In light of this clear record that the deportation possibility carried no particular emphasis, we certainly cannot conclude that the District Court's conclusion in the

present proceeding that the prejudice prong of the *Strickland/Hill* test was not met constituted error.

In further support of this conclusion, we note, as did the District Court, that the Supreme Court in *Hill* described "the resolution of the 'prejudice' inquiry" as closely related to the objective prediction of whether the defense could succeed if the case went to trial. *See Hill,* 474 U.S. at 59–60, 106 S.Ct. at 370–71.[1] As the District Court also noted, "even prior to *Hill,* this Circuit required a colorable claim of innocence to justify vacating a plea on ineffective assistance of counsel grounds." *United States v. Del Rosario,* Crim. No. 86–356–01, slip op. at 10–11 (D.D.C. Nov. 28, 1988) (citing *United States v. Barker,* 514 F.2d 208, 211 (D.C.Cir.) (en banc), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975)). While the defendant in the present case now asserts his innocence, we note that the evidence against him was strong, that in allocution the defendant admitted that he had "made a mistake," and that the claim of innocence did not surface until more than seventeen months after his hearing and some months after he had been served notice of the deportation action against him. As we have previously stated:

> A swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

*Barker,* 514 F.2d at 222.

In reviewing Del Rosario's collateral attack upon his conviction under § 2255, the District Court was properly mindful of its mandate to overturn the conviction only if it resulted in "a complete miscarriage of justice." *Hill,* 368 U.S. 424 at 428, 82 S.Ct. 468 at 471, 7 L.Ed.2d 417. The District Court, after an evidentiary hearing, held that Del Rosario "fails to demonstrate that the outcome of his case would have been any different had he been aware of the likely deportation consequences of his guilty plea." *Del Rosario,* Crim. No. 86–356–01, slip op. at 12. The District Court reached this conclusion upon finding that Del Rosario's claim of innocence was not credible, and that had he gone to trial, "the odds are overwhelming that he would have been convicted." *Id.* at 13. *See United States v. Quin,* 836 F.2d 654, 656 (1st Cir. 1987) (affirming denial of § 2255 motion upon finding protestations of innocence not credible); *United States v. Gavilan,* 761 F.2d 226 (5th Cir.1985) (affirming denial of § 2255 motion for lack of claim of innocence or allegation defendant would have pled differently).

This Court applies a highly deferential degree of scrutiny to the District Court's findings of fact; they will be overturned only if "clearly erroneous." *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; Fed.R. Civ.P. 52(a). The District Court found the government's evidence persuasive and Del Rosario's claim of innocence not credible. Furthermore, the District Court reviewed detailed statements about the crime that Del Rosario made to a probation officer.

Given the full state of the law and the evidence, and the deference owed the trial judge as to findings of fact, it is simply inconceivable that we would find reversible error as to the prejudice element of the *Strickland/Hill* analysis. *United States v. Hinckley,* 672 F.2d 115, 119 (D.C.Cir. 1982); Fed.R.Civ.P. 52(a).

■ While this, of course, is dispositive of the present attack on the guilty plea, we would further note our conclusion that Del Rosario has not even met the first prong of the *Strickland/Hill* test. Del Rosario's argument to the contrary relies on several cases from state courts. *See People v. Pozo,* 746 P.2d 523 (Colo.1987); *People v. Padilla,* 151 Ill.App.3d 297, 104 Ill.Dec. 522, 502 N.E.2d 1182 (1986), *appeal de-*

---

1. The Supreme Court's discussion occurred in the context of ineffective assistance claims relating to the failure to discover evidence of an affirmative defense, but the reasoning is also persuasive in the collateral consequences context.

*nied,* 114 Ill.2d 554, 108 Ill.Dec. 423, 508 N.E.2d 734 (1987); *Daily v. State,* 61 Md. App. 486, 487 A.2d 320 (1985); *People v. Correa,* 124 Ill.App.3d 668, 80 Ill.Dec. 395, 465 N.E.2d 507 (1985); *Lyons v. Pearce,* 298 Ore. 554, 694 P.2d 969 (1985); *People v. Superior Court,* 11 Cal.3d 793, 114 Cal. Rptr. 596, 523 P.2d 636 (1974). All these cases, to a greater or lesser degree, support Del Rosario's proposition. Some are distinguishable, but since none is controlling, it is unprofitable to pursue the subject in any detail. Rather, we adopt as the proper rule the view endorsed by several of our sister circuits that "counsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance." *United States v. Campbell,* 778 F.2d 764, 768 (11th Cir.1985). *Accord United States v. George,* 869 F.2d 333 (7th Cir.1989); *United States v. Yearwood,* 863 F.2d 6 (4th Cir.1988); *United States v. Gavilan,* 761 F.2d 226 (5th Cir.1985); *United States v. Santelises,* 509 F.2d 703 (2d Cir.1975). Collateral consequences of a guilty plea are many. They may include the loss of civil service employment, *United States v. Crowley,* 529 F.2d 1066 (3d Cir.1975), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976), of the right to vote and to travel freely abroad, *Meaton v. United States,* 328 F.2d 379 (5th Cir.1964), *cert. denied,* 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965), of the right to a driver's license, *Moore v. Hinton,* 513 F.2d 781, 782–83 (5th Cir.1975), and of the right to possess firearms, 18 U.S.C. § 921. But we have long held that a defendant's incomplete awareness of collateral consequences of a guilty plea does not render that plea involuntary. As we noted in *United States v. Sambro,* the Supreme Court's observation in *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), "that the accused must be 'fully aware of the *direct* consequences,' " of a guilty plea supports an assumption that the Court, by using the word " 'direct' . . . excluded *collateral* consequences." 454 F.2d at 918, 922 (emphasis in *Sambro* ).

Deportation is a harsh collateral consequence, but many other collateral consequences are also harsh. In common with the Eleventh Circuit "we do not find deportation so unique as to warrant an exception to the general rule that a defendant need not be advised of the [collateral] consequences of a guilty plea." *Campbell,* 778 F.2d at 769.[2]

We therefore conclude that, nothing else appearing, trial counsel's failure to advise a defendant of the collateral consequence of a plea of guilty affecting the possibility of the deportation of the defendant, does not fall short of the "objective standard of reasonableness," testing the adequacy of counsel's representation under *Strickland.*

### B. *The Rule 11 Claims*

Del Rosario alleges two distinct deficiencies in the Rule 11 proceedings at the time of his plea. He claims that the District Court failed to meet the Rule 11 requirement, that it "inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered," and that it inform him of "the maximum possible penalty provided by law." Fed.R.Crim.P. 11(c)(1). Del Rosario has established no right to relief on either of these bases.

Our inquiry into the viability of a collateral attack on a Rule 11 proceeding is governed by *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). In that case, a unanimous Supreme Court held that "collateral relief [under section 2255] is not available when all that is shown is a failure to comply with the

---

**2.** A different analysis might be in order if a pleading defendant were affirmatively misled as opposed to merely uninformed or if a defendant had expressly requested information from counsel who nonetheless remained silent. These cases are not before us and we do not decide them. We recognize that Del Rosario now claims that his counsel affirmatively misled him, a claim asserted for the first time in this appeal, and indeed inconsistent not only with the plea transcript but with his position in the District Court in the present proceeding. We will not consider this tardy assertion. *Cf. United States v. Yearwood,* 863 F.2d at 7 (rejecting late allegation of misadvice concerning deportation consequences as unavailable on appeal).

formal requirements of ... Rule [11]." *Id.* at 785, 99 S.Ct. at 2088 (citations omitted). The most Del Rosario has shown is a failure to comply with such formal requirements. Granted, the Court never stated to the defendant, "These are the elements of the offense with which you are charged." But the Court did plainly inform the defendant that he was charged with possession of cocaine with the intent to distribute. The Court further required the United States to demonstrate the factual basis for the plea. The defendant then acknowledged the accuracy of the evidentiary presentation and the Court accurately found the existence of a factual basis for the plea required by Rule 11. Given the language of the rule itself that "any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded," and the holding of *Timmreck,* it is plain that the Court's failure explicitly to outline the elements under that name warrants no relief. As we have previously stated, "habeas courts do not sit to insure compliance with the strict technicalities of Rule 11." *United States v. Cooper,* 725 F.2d 756, 758 (D.C.Cir.1984). As we further stated in *Cooper,* a defendant's "claim that he was not informed of the elements of the offense is refuted by the fact that the indictment was read to him and the prosecutor articulated all the evidence he would produce against defendant if the case would go to trial." *Id.* at 759. We need add no more in rejecting Del Rosario's claim.

■ Likewise, the failure of the District Court to inform defendant of the special parole term avails him nothing. Granted, the version of Rule 11 in effect at the time required that the Court "inform the defendant of ... the effect of any special parole term." Fed.R.Crim.P. 11(c). Granted, the Court did not. But, the Court did inform him of exposure to a maximum active sentence of fifteen years. Del Rosario actually received a sentence of four to twelve months incarceration and three years of special parole. Furthermore, he was sentenced to the special parole term at the same time and made no inquiry or objection until his present petition approximately

nineteen months later. To set aside the plea at this late date, we would be required to determine that a miscarriage of justice resulted from the failure to warn a defendant of a possible sentencing option significantly less onerous than the sentence actually received and well within the range of sentences as to which the District Court had offered full advice. On these facts we would then have to determine a likelihood that the defendant would have taken his chances on trial for the greater penalty had he been warned of the lesser one, and that for undisclosed reasons he remained mute for months after he found out about this dread miscarriage of justice. We simply cannot so conclude.

In *Timmreck,* the trial court advised a drug defendant that he could receive a sentence of fifteen years imprisonment but failed to describe the mandatory special parole term of at least three years. There, as here, the defendant waited almost two years to mount his collateral attack. There, the Court noted, "respondent does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty." *Timmreck,* 441 U.S. at 784, 99 S.Ct. at 2087. Here, as there, Del Rosario cannot credibly argue any differently, his bald assertion to the contrary notwithstanding.

We can only conclude, as the Supreme Court did, that appellant's "only claim is of a technical violation of the rule. That claim could have been raised on direct appeal ... but was not. And there is no basis here for allowing collateral attack 'to do service for an appeal.'" *Id.* (quoting *Sunal v. Large,* 332 U.S. 174, 178, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982 (1947)) (other citations omitted).

### III. CONCLUSION

For the reasons set forth above, we conclude that the District Court rightly found no adequate basis for the granting of relief from the defendant's voluntary guilty plea. We conclude that he was not deprived of his Sixth Amendment rights by inadequate

counsel, nor has he offered any deficiencies in the Rule 11 proceedings sufficient to warrant a successful collateral attack. Therefore, the judgment of the District Court is

*Affirmed.*

MIKVA, Circuit Judge, concurring in the judgment:

The majority holds that trial counsel's failure to warn Del Rosario about the possible deportation consequences of entering a guilty plea did not constitute ineffective assistance of counsel. The court reaches this conclusion despite the trial judge's holding to the contrary. When this decision is combined with precedents holding that a judge taking a plea in a Rule 11 proceeding is not required to inform a defendant of deportation consequences of a guilty plea, *see, e.g., Fruchtman v. Kenton,* 531 F.2d 946, 948–49 (9th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976), the result is extremely troubling. Under existing law, a defendant wholly ignorant of the possibility that he may be deported as a result of pleading guilty will nonetheless be held to this plea—and its harsh consequences—as long as he was not affirmatively misled by court or counsel about the impact of pleading guilty. In the case at hand, the court was made aware of the defendant's alien status, but defendant's counsel and the government offered confusing and conflicting information about the consequences of a guilty plea. It is most disturbing that this fact situation does not put in question the effectiveness of counsel's representation.

Current teaching about allowing a defendant to withdraw a guilty plea is stretched to its limits when the majority casts the district judge as "Maximum Juror" by reviewing as a "finding of fact" his guesstimate about what a jury would have done had the case gone to trial. No trial judge can be comfortable in such a role. Deportation is indeed a "harsh collateral consequence." It can result "in loss ... of all that makes life worth living." *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922). It is unlike losing one's driver's license, or the right to own firearms, or the right to a government job—each of which the majority describes as a similarly weighty deprivation. The possibility of being deported can be—and frequently is—the most important factor in a criminal defendant's decision how to plead. Because deportation is in a category so obviously distinct from the other collateral consequences enumerated by the majority, I have sore difficulty crediting the fiction that the defendant has knowingly pled when he is not provided meaningful information about the relevant deportation consequences of his plea.

I would hope that the Rules Committee of the Judicial Conference would consider amending Rule 11 of the Rules of Criminal Procedure to require a judge taking a guilty plea to inform an alien that pleading guilty might result in deportation—at least when the judge is made aware of the defendant's alien status before accepting his plea. I do not seek to frustrate the undeniable benefits of resolving prosecutions through a streamlined and efficient Rule 11 proceeding. Yet, the validity of such proceedings is unequivocally premised upon the defendant's knowing the most significant consequences of his plea. Rule 11 requires that a defendant be told the punishment allowed under the guilty plea; it should similarly require that such a major consequence as deportation also be put in the praecognita.