**Robert CHUKWURAH, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Nos. CV–92–5276 (CPS), CV–92–5853 (CPS).

United States District Court, E.D. New York.

Jan. 5, 1993.

Robert Chukwurah, pro se.

Seth Lee Marvin, U.S. Attorney's Office, Criminal Div., Brooklyn, Scott Dunn, U.S. Atty., for U.S.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Petitioner, Robert Chukwurah, appearing *pro se*, moves pursuant to 28 U.S.C. § 2255 to set aside his conviction for heroin importation. Additionally, petitioner, who is a resident alien currently being detained by the Immigration and Naturalization Service ("INS"), requests this Court to stay the deportation proceeding against him pending the resolution of his section 2255 petition and seeks an order directing the district director of the INS to release petitioner on special parole. For the following reasons, the section 2255 petition is denied, the application for a preliminary stay of the deportation proceeding is denied, and the remaining habeas corpus claim is transferred pursuant to 28 U.S.C. § 1406(a).

Chukwurah bases his section 2255 petition on three grounds. He argues first that his plea of guilty was involuntary because, at the time of the plea, he was unaware of the possibility that his conviction may lead to deportation. Second, he argues that he was denied effective assistance of counsel. Third, he argues that his conviction violates the principles of double jeopardy embodied in the Fifth Amendment to the Constitution principally because he faces the possibility of being imprisoned for as long as five years by the Nigerian Government as a result of his conviction in the United States. Petitioner also challenges his sentence on the ground that the government withheld evidence favorable to petitioner.

Chukwurah was born in and is a citizen of Nigeria. He traveled to the United States in November 1980 as a non-immigrant business visitor, and on August 28, 1982, he was accorded lawful permanent residence status.

On September 16, 1989, Chukwurah was arrested after arriving at John F. Kennedy International Airport on a Nigeria Airways flight. A search revealed that Chukwurah had concealed 96 packages of heroin in his abdominal area. On October 26, 1989, petitioner pled guilty before this Court to the offense of importation of heroin in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3) and 18 U.S.C. § 3551 and was sentenced on May 14, 1990, to 41 months imprisonment.

Upon completion of the term of imprisonment, the INS commenced deportation proceedings against Chukwurah on October 23, 1992. Chukwurah is charged with being deportable as an alien convicted of a narcotics-related offense and as an alien convicted of an aggravated felony. *See* 8 U.S.C. § 1251(a)(2)(B)(i), (A)(iii).

The INS is currently detaining petitioner pursuant to 8 U.S.C. § 1252(a). An immigration judge has set bond at $10,000. Chukwurah has applied for a waiver of deportation pursuant to 8 U.S.C. § 1182(c), which allows the waiver of deportation charges against a lawful permanent resident who has maintained a lawful unrelinquished domicile in the United States for seven years. A deportation hearing on this application is scheduled to occur on January 6, 1993.

## DISCUSSION

█ Although Chukwurah's term of imprisonment expired when he was released from prison, he is currently serving a three-year term of supervised release, unless and until he is deported. Thus, Chukwurah is still "in custody" within the meaning of 28 U.S.C. § 2255 and may therefore collaterally attack the validity of his conviction. *See Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *United States ex rel. B. v. Shelly*, 430 F.2d 215, 219 n. 3 (2d Cir.1970) (person on probation is in custody for purposes of habeas petition); *see, e.g., Donat v. United States*,

1991 WL 81946 (E.D.N.Y.1991) (Glasser, J.) (reaching merits of 2255 claim when petitioner was serving term of supervised release).

■ Petitioner did not raise the arguments he currently raises at any time during the criminal proceeding, nor did he appeal his sentence. Generally, a petitioner must show cause for failing to raise the alleged error in the criminal case and show the actual prejudice that resulted from the error. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982); *Campino v. United States*, 968 F.2d 187, 190–91 (2d Cir.1992) (applying the cause and prejudice standard in a section 2255 action for constitutional error).

Chukwurah has not explicitly addressed this procedural issue. Most of Chukwurah's claims revolve around the possible deportation consequences of his conviction, and it may be that the cause of his failure to raise these claims during the criminal proceeding was his alleged lack of awareness of the possible deportation. However, since, as discussed below, Chukwurah cannot show actual prejudice, this Court does not reach the issue of whether Chukwurah has adequately shown cause.

■ Chukwurah's argument that his plea was involuntary and is constitutionally infirm is contradicted by the record of his criminal proceeding. Chukwurah argues that he was compelled to sign the plea agreement because of the threat of a twenty-year sentence and because he was unaware of the possible deportation consequence of the conviction. Chukwurah claims that he would not have plead guilty if he had known that he could be deported as a result of the conviction.

However, during the plea allocution, Chukwurah acknowledged that he understood the consequences of pleading guilty:

Q. ... First of all, do you understand what you're accused of having done?

A. Yes, Your Honor.

Q. Have you been told what the maximum penalty is for doing this?

A. Yes, Your Honor.

Q. And what do you understand the maximum penalty to be?

A. It's zero to 20 years.

\* \* \* \* \* \*

Q. Has anyone, in your own mind, threatened or forced you to do this, that is, to plead guilty?

A. No, Your Honor.

\* \* \* \* \* \*

Q. Has anyone—in your own mind, has anyone promised you that I will impose a particular sentence?

A. No, Your Honor.

Oct. Tr. 9–12 [Gov't Exh. 5].

Also, prior to accepting his plea, the Court specifically informed Chukwurah that "If you plead guilty, this may lead to your being deported from the country." Oct. Tr. 9. Furthermore, during the plea allocution, defense counsel raised the deportation issue also, observing that it was very likely that Chukwurah would be deported:

MR. WASSERSTEIN: ... I feel its my obligation to make a motion addressed to the immigration consequences, even though in a drug offense it is—largely a fait accompli.

Oct. Tr. 12.

Petitioner's statements during the plea allocution carry a "strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir.1992). Chukwurah has not indicated any factual circumstance which casts doubt on this presumption. Moreover, even if Chukwurah was unaware of the possible deportation consequences of his guilty plea, this is not sufficient to render the plea involuntary. *United States v. Santelises*, 509 F.2d 703, 703–04 (2d Cir.1975).

■ Chukwurah's claims of ineffective assistance of counsel are likewise unavailing. Ineffective assistance claims require a showing: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's

unprofessional errors, petitioner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 57–58, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). In assessing an ineffective assistance claim, this Court must start from a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65; *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990), and must assess counsel's alleged shortcomings in light of the circumstances of the case. *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65. Further, the resolution of the "prejudice inquiry," i.e., the second prong of the dual showing, is closely related to the objective prediction of whether the defense could succeed if the case went to trial. *Hill,* 474 U.S. at 59–60, 106 S.Ct. at 370–71; *see United States v. Del Rosario,* 902 F.2d 55, 58 (D.C.Cir.), *cert. denied,* 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990).

Chukwurah alleges that his counsel's representation was constitutionally deficient in that counsel (1) failed to inform petitioner of the deportation consequences of pleading guilty, (2) failed to include a provision in the plea agreement barring the deportation of petitioner, (3) failed to challenge vigorously the weight of the narcotic substance seized from petitioner, (4) misleadingly guaranteed a sentence less than 41 months.

■ In the circumstances of this case, defense counsel's alleged failure to inform Chukwurah of possible immigration consequences of his plea is not a sufficient basis for an ineffective assistance claim. *See Santelises,* 509 F.2d at 704. Some courts have found that in certain narrowly delimited circumstances an affirmative misrepresentation as to deportation consequences may support a claim of ineffective assistance. *See, e.g., Downs–Morgan v. United States,* 765 F.2d 1534 (11th Cir.1985). However, in this case, Chukwurah does not

claim that his attorney affirmatively provided him with erroneous advice about the possibility of deportation. Deportation is a collateral consequence of the criminal proceeding, and therefore, in the absence of an affirmative misrepresentation, counsel's failure to inform a defendant of the immigration consequences of the plea does not amount to ineffective assistance of counsel. *Santelises,* 509 F.2d at 704; *see also Del Rosario,* 902 F.2d at 56; *Santos v. Kolb,* 880 F.2d 941, 944–45 (7th Cir.1989), *cert. denied,* 493 U.S. 1059, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990); *United States v. Yearwood,* 863 F.2d 6 (4th Cir.1988); *United States v. Campbell,* 778 F.2d 764 (11th Cir.1985).

Moreover, since Chukwurah was specifically informed by the Court of the possibility of deportation, he cannot plausibly show that there is a reasonable probability that, if counsel had specifically informed him of the deportation consequences, he would have declined to plead guilty and would have insisted on trial. *Cf. Del Rosario,* 902 F.2d at 57 (noting that during a colloquy at sentencing the court, the prosecutor, and defense counsel discussed the "distinct possibility" of deportation). In fact, nowhere does Chukwurah claim that he is innocent of the charges to which he pled guilty. Thus, petitioner is unable to show that the allegedly ineffective assistance prejudiced his defense.

■ Likewise, the fact that defense counsel did not pursue or obtain a provision in the plea agreement barring the government from seeking the deportation of petitioner does not amount to a violation of petitioner's Sixth Amendment right to counsel because the failure to secure certain provisions in a plea agreement could not possibly have prejudiced petitioner's defense of the criminal charges against him. *See Hill,* 474 U.S. at 59, 106 S.Ct. at 370; *Strickland,* 466 U.S. at 692–94, 104 S.Ct. at 2067–68.

■ Chukwurah's claim that defense counsel did not vigorously challenge discrepancies in DEA reports of the gross weight of the narcotics seized from Chukwurah is without merit. The DEA Form 7

that reflects the analyses of the narcotic substance taken from Chukwurah indicates that, on September 17, 1989, the day following petitioner's arrest, the "approximate gross quantity" of the substance seized was 777.1 grams. The same form indicates that the laboratory analysis performed on October 5, 1989, revealed that the gross weight of the seized substance was 809.5 grams.

Petitioner's concern about the discrepancy in gross weight is misplaced, however, since gross weight does not affect the calculation of the offense level. Under the sentencing guidelines, the offense level is calculated with reference to the net weight of the narcotics involved, i.e., net of the packaging. *See Guidelines Manual*, 2D1.1(c)(8), comment (*) (November 1992) ("Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."). Furthermore, the discrepancy in itself is not suspicious; the first measurement purports to be the *approximate* gross weight of the seized materials as measured in the field, whereas the second measurement is a more precise measurement conducted under laboratory conditions using sophisticated equipment. *Cf.* Complaint, CR 89–1236 (misc.), dated Sept. 18, 1989, at ¶ 3 ("A field test conducted on the substance proved positive for the presence of heroin with a gross weight of approximately 777.1 grams.") [Gov't Exh. 1]; *and* DEA Form 7 (Chukwurah, R.) at Line 13 ("Approx. Gross Quantity"); *with* DEA Form 7, at Line 25 ("Gross Wt.").

In any event, the record reveals that defense counsel diligently pressed the issue of the appropriate weight to be used in calculating the offense level; defense counsel raised this issue on three different occasions: (1) in a letter dated December 26, 1989, defense counsel objected to the presentence investigation report, arguing that the net weight should be less than 400 grams [Gov't Exh. 7]; (2) in a letter dated January 10, 1990, defense counsel articulated the objection that there is a discrepancy in the calculation of the gross weight [Gov't Exh. 9]; and (3) defense counsel again raised the concern regarding the weight during sentencing [Gov't Exh. 13]. This Court specifically addressed the issue of the weight to be used in the sentence calculation during sentencing; after receiving testimony from petitioner and hearing oral argument from both sides, the Court found that the probation department used the appropriate net weight (i.e., net of packaging, but not net of other substances beside heroin) as the basis for determining the offense level. May 14, 1990 Tr. at 19 [Gov't Exh. 13].

■ Finally, petitioner argues that defense counsel misleadingly assured petitioner that his sentence would be less than 41 months. This contention does not suffice as a basis for an ineffective assistance claim as a matter of law. *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989) ("a defendant [is] not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence"); *see, e.g., Arbelaez–Osorio v. United States*, 788 F.Supp. 718, 720 (E.D.N.Y.1992) (citing *Sweeney* to support position that an ineffective assistance claim based on counsel's erroneous prediction of sentence is insufficient as a matter of law). Furthermore, Chukwurah acknowledged during the plea allocution that no promises had been made to persuade him to plead guilty, that he understood that he could not withdraw his plea of guilty so long as the sentence is not greater than the maximum penalty of twenty years imprisonment, and that no one has promised that the Court will impose a particular sentence. Oct. Tr. 9–12.

Chukwurah also argues that the sentence imposed on him violates the constitutional principles of double jeopardy. Chukwurah apparently has two bases for this argument. First, he appears to argue that the current INS detainment constitutes an unconstitutional second punishment for his conviction. Second, he argues that, if he is deported to Nigeria, he faces a five-year sentence there solely because of his conviction in the United States. Both arguments, as a matter of law, do not make out a double jeopardy claim.

■ Generally, the constitutional prohibition of double jeopardy is offended where a criminal defendant is subjected to a second prosecution for the same offense after conviction or acquittal and where a criminal defendant is subjected to multiple punishments for the same offense. *See generally Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980). The current detention of petitioner by the INS does not amount to punishment and hence does not implicate the constitutional protection against double jeopardy.

Chukwurah's current detention is part of the deportation proceeding. Pursuant to 8 U.S.C. § 1252(a), the INS may detain aliens charged to be deportable pending the adjudication of the charges. Section 1252(a) provides in part:

> The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense).

8 U.S.C. § 1252(a)(2)(A). A deportation proceeding is not a criminal prosecution but is a civil action collateral to any criminal proceeding. *See United States v. United States Currency in the Amount of $228,536*, 895 F.2d 908, 915 (2d Cir.), *cert. denied*, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990); *United States v. Hernandez*, 588 F.2d 346, 351–52 (2d Cir.1978); *Kandiel v. United States*, 964 F.2d 794, 796 (8th Cir.1992); *see also Del Rosario*, 902 F.2d at 59; *Santos*, 880 F.2d at 943–45. Hence, deportation proceedings do not constitute a "second prosecution."

Further, the consequence of deportation and its attendant hardship on the deported alien, including interim incarceration, are not forms of punishment. *See Linnas v. INS*, 790 F.2d 1024, 1030 (2d Cir.1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 600, 93 L.Ed.2d 600 (1986), *reh'g denied*, 479 U.S. 1070, 107 S.Ct. 964, 93 L.Ed.2d 1012 (1987); *see generally Mahler v. Eby*, 264 U.S. 32, 39, 44 S.Ct. 283, 286, 68 L.Ed. 549 (1924). Rather, the power to expel an alien convict-

ed of crimes in this country is a fundamental sovereign attribute exercised by the government's political departments; decisions to expel an alien reflect concerns about national interests, not a desire to punish the expelled alien. *Fiallo v. Bell*, 430 U.S. 787, 794–96, 97 S.Ct. 1473, 1479–80, 52 L.Ed.2d 50 (1977).

Thus, notwithstanding the fact that the deportation proceeding and petitioner's current detention stem from his conviction, he is not being subject to multiple penalties for the same offense. Hence neither the deportation proceeding nor the attendant incarceration of petitioner offend double jeopardy principles.

■ Likewise, the fact that Chukwurah may face a term of imprisonment in Nigeria based on his conviction here does not render his conviction or sentence of imprisonment constitutionally infirm. It is well established that the "double jeopardy clause's protection only applies in instances where the same sovereign is responsible for the successive prosecutions." *United States v. Giovanelli*, 945 F.2d 479, 491 (2d Cir.1991); *see also United States v. Riviere*, 924 F.2d 1289, 1302 (3d Cir.1991). Under the dual sovereign doctrine, i.e., the principle that two separate sovereigns may both prosecute a person for the same offense, the United States and Nigeria "may bring successive prosecutions for the same offense" against petitioner without offending double jeopardy principles. *Vasquez v. United States*, 1989 WL 38311 (E.D.N.Y. 1989); *see also United States v. Richardson*, 580 F.2d 946, 947 (9th Cir.1978), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979); *Matter of Extradition of Montiel Garcia*, 802 F.Supp. 773, 776 (E.D.N.Y.1992); *see generally United States v. Wheeler*, 435 U.S. 313, 317–18, 98 S.Ct. 1079, 1082–83, 55 L.Ed.2d 303 (1978); *Bartkus v. Illinois*, 359 U.S. 121, 139, 79 S.Ct. 676, 686, 3 L.Ed.2d 684 (1959).

Finally, Chukwurah belatedly attacks his sentence, arguing that the government failed to disclose evidence favorable to the defense. As the basis for this claim, he refers to the government's contention made prior to sentencing that Chukwurah

had been arrested in Texas in 1983 and placed on probation for six months for assaulting a police officer. [See Gov't Exh. 10; letter from AUSA, dated April 9, 1990.] Chukwurah contends that the arrest in 1983 was for damaging property and not for assault and that the Assistant U.S. Attorney was aware of this when he advised the Court of Chukwurah's prior criminal record. This allegation is irrelevant, however, because the government's representation did not influence this Court in sentencing Chukwurah. This Court found that Chukwurah had no prior criminal record and accordingly his sentence was computed with a Criminal History Category of I under the sentencing guidelines. Moreover, since the Court sentenced Chukwurah to the lowest possible sentence under the guideline range in this case, there is no danger that the government's representation worked more subtly on the mind.

Accordingly, Chukwurah's section 2255 petition is denied. Since the section 2255 petition is denied, the Court need not address petitioner's request for preliminary relief in the form of a stay of the deportation proceeding.

 Petitioner also raises a claim about his current confinement by the INS which is not based on the claim that his conviction in this Court is invalid. Petitioner suggests that he is eligible for conditional parole under 8 U.S.C. § 1252(a) and that it is an abuse of discretion not to grant petitioner this status. This argument however, must be presented to the district court that has jurisdiction over petitioner's custodian, specifically, the warden of the INS detention facility located in Aurora, Colorado. 28 U.S.C. § 2241; *see United States v. Huss*, 520 F.2d 598, 604 (2d Cir.1975) (quoting *Freeman v. United States*, 254 F.2d 352, 353–54 (D.C.Cir.1958)); *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2d Cir.1976); *see also Braden v. 30th Judicial Cir. Ct.*, 410 U.S. 484, 494, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973); *see, e.g., Peon v. Thornburgh*, 765 F.Supp. 155, 156 (S.D.N.Y.1991); *Ledesma–Valdes v. Sava*, 604 F.Supp. 675, 679 (S.D.N.Y.1985). Therefore, this Court does not have juris-

diction to reach the merits of this claim. In the interests of justice and to avoid unnecessary delay, this claim should be transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1406(a), rather than dismissed. *See Peon*, 765 F.Supp. at 156.

Accordingly, the Clerk is directed to enter judgment dismissing the petition for mandamus in CV–92–5853 and to transfer the remaining habeas claim under 28 U.S.C. § 2241 in CV–92–5276 to the United States District Court for the District of Colorado.

SO ORDERED.