2001 UT 12

**STATE of Utah, Plaintiff and Appellee,**

v.

**Johnny Anthony MARTINEZ, Defendant and Appellant.**

**No. 990713.**

Supreme Court of Utah.

Feb. 9, 2001.

Rehearing Denied June 18, 2001.

---

Mark Shurtleff, Att'y Gen., Catherine M. Johnson, and Erin Riley, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Scott L. Wiggins, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 On advice of counsel, defendant Johnny Anthony Martinez pleaded guilty to first degree murder. He later moved the district court to allow him to withdraw his guilty plea. After a hearing on the matter, the district court denied defendant's motion. Defendant appeals, claiming that he was denied the effective assistance of counsel and that his guilty plea was not knowing and voluntary. We affirm.

## BACKGROUND

¶ 2 As a result of the death of three-year-old Orlando Chacon, defendant was charged with two first degree felonies: murder, Utah Code Ann. § 76–5–203(1)(b) & (c) (1999), and aggravated sexual abuse of a child, Utah Code Ann. § 76–5–404.1 (1999). At arraignment defendant pleaded not guilty, a trial date was set, and a pre-trial hearing was scheduled. In the course of negotiations, the State offered to dismiss the charge of aggravated sexual abuse if defendant agreed to plead guilty to the first degree murder charge.

¶ 3 Prior to the pre-trial hearing, defendant and his appointed counsel, Glen T. Cella, met and discussed the State's offer. Cella advised defendant that if he pleaded guilty to the first degree murder charge, he could file a motion requesting that the murder conviction be reduced to a second degree felony pursuant to section 76–3–402 of the Utah Code. Defendant later testified that Cella informed him that he had a "good fifty-fifty chance" of having the conviction reduced; but he couldn't promise anything, and it was the judge's decision whether to grant the motion.

¶ 4 At the January 21, 1997 pretrial hearing, defendant indicated that he wished to change his plea because he intended to enter into a plea agreement with the State. The court confirmed the nature of the plea offer

with the State, Cella, and defendant, and then questioned defendant. In the colloquy between the court and defendant, the court informed defendant of, and defendant acknowledged that he understood, the following: (1) the possible penalty of five years to life in prison for first degree felony murder, (2) the right against self-incrimination, (3) the right to a jury trial and that the matter was set for trial, (4) the burden at trial would be on the State to prove defendant's guilt, (5) the right to testify, (6) the right to compel the attendance of witnesses, and (7) the right to confront and cross-examine witnesses. The court also told defendant, and defendant indicated that he understood, that (8) if he were convicted at trial he had the right to appeal, (9) if he pleaded guilty he would be giving up the rights explained, and (10) if he pleaded guilty he would only be able to challenge whether the plea was knowing and voluntary on appeal. Finally, the court asked defendant if he was pleading guilty because he felt he was guilty, and if he was entering his plea of his own free will and choice. Defendant responded affirmatively to both questions. The court then asked defendant if anyone made any promises to him regarding what sentence would be imposed, to which defendant replied no. The prosecutor then articulated the facts supporting the plea, including that defendant shook the child and that the child died of non-accidental trauma. Defendant admitted those facts, and the court found the facts to support a guilty plea.

¶ 5 The court also questioned defendant about the affidavit to be signed as part of the plea agreement. Defendant indicated that he understood the terms and conditions of the affidavit and plea agreement. He also acknowledged to the court that he read and discussed the affidavit with his counsel and that he still wished to enter into the plea agreement. Cella affirmed that he reviewed the affidavit with defendant and that defendant understood the terms and conditions, was competent, and that the agreement was supported by the evidence. Defendant executed the plea agreement in open court. The court reconfirmed with defendant that he still wished to plead guilty to the murder charge. The court then asked defendant for his plea to the charge of first degree murder,

and defendant responded, "guilty." The court accepted the plea, finding it knowing and voluntary. The court also informed defendant that he had thirty days to request to withdraw his guilty plea; but he must show good cause, and it was the court's decision whether to grant a motion to withdraw.

¶ 6 The plea affidavit signed by defendant expressly states that defendant understood the facts that supported the elements of murder. Those facts include: that he committed an act clearly endangering the victim's life, he intended to cause serious bodily injury to the victim, he violently shook the victim, he did so intentionally and knowingly, and he caused the victim's death. In signing the affidavit, defendant also acknowledged, among other things, that he understood the nature and elements of first degree murder. Additionally, defendant acknowledged that he was "entering this plea voluntarily and with knowledge and understanding that [he was] waiving certain constitutional rights," and that he was admitting to the elements of the offense. His affidavit also admits that no promises were made regarding any sentencing recommendation, and that any sentencing recommendations from defense counsel or the State were not binding on the judge. His affidavit further notes, "I am satisfied with the advice and assistance of my attorney."

¶ 7 A week after defendant's guilty plea, defense counsel filed a motion requesting that defendant's conviction be reduced from first to second degree murder under section 76–3–402 of the Utah Code. On February 24, 1997, the prosecutor sent defense counsel a memo informing counsel that a murder conviction could no longer be reduced under section 76–3–402 and that the possibility of reducing the conviction "was, I am sure, a consideration for pleading guilty."

¶ 8 The next day, February 25, 1997, defendant was scheduled to appear for a sentencing hearing. Prior to the sentencing hearing, counsel and defendant met briefly in the holding cell where counsel informed defendant of his mistake. He told defendant that the advice was erroneous and that the first degree murder conviction could not be

reduced to a second degree felony. During the five-to-ten minutes counsel spent with defendant, counsel also informed him that he could likely have his guilty plea withdrawn and proceed to trial.

¶ 9 At the sentencing hearing, Cella explained to the court that he misrepresented the law to defendant and thus provided him with erroneous advice. Specifically, counsel said that he incorrectly advised defendant that he could file a motion under section 76–3–402 to reduce the first degree murder charge to a second degree felony. Cella also explained, however, that he informed defendant of his mistake and told defendant that the law no longer allowed the murder conviction to be reduced. Utah Code Ann. § 76–3–406 (1999). Cella said that he told defendant that he could either proceed with sentencing or ask the court to permit him to withdraw his guilty plea. The court then asked defendant, following Cella's explanation, whether he still desired to proceed with sentencing. Defendant told the court that he wanted "to proceed." Counsel also stated, "We'd like to go ahead and be done with it today then, your honor." The district court sentenced defendant to a term of five years to life and ordered him to pay restitution for medical and funeral costs and a fine of $5,000, plus surcharge.

¶ 10 On March 31, 1997, defendant filed a notice of appeal. He later moved this court to have the case remanded to the district court to request permission to withdraw his guilty plea. We granted defendant's motion and remanded the case.

¶ 11 Defendant accordingly filed a motion to withdraw his guilty plea, claiming his plea was not knowing and voluntary. The district court conducted a hearing on defendant's motion. At the hearing, defendant testified that he relied on the possibility that he could have his conviction reduced, and even though he knew it wasn't guaranteed, the possibility influenced him to plead guilty. He testified that he "didn't want to go through a trial because [he] didn't want to put [the victim's mother] . . . through the emotion and . . . the hurt." He also confirmed that his decision not to ask the court to withdraw his guilty plea at sentencing was a conscious decision because he did not wish to hurt the victim's mother.

¶ 12 At the hearing on defendant's motion to withdraw his plea, Cella testified that he thought defendant was competent, understood the terms and conditions of the plea agreement, and that the agreement was supported by the evidence. Cella also testified that even if he would have known the law no longer permitted a motion to reduce a murder conviction, he still would have advised defendant to enter into the plea agreement.

¶ 13 The district court denied defendant's motion to withdraw his guilty plea, determining that defendant's guilty plea was knowing and voluntary and that he "knowingly and intentionally declined to file any motion to withdraw his plea and voluntarily elected to proceed with the sentencing." The court also determined that counsel was not deficient or ineffective. Defendant appeals, presenting two arguments: (1) that he was denied the effective assistance of counsel, and (2) that his guilty plea was not knowing and voluntary.

## STANDARD OF REVIEW

¶ 14 The denial of a motion to withdraw a guilty plea is reviewed under an abuse of discretion standard, incorporating a clearly erroneous standard for findings of fact made in conjunction with that decision. *State v. Benvenuto*, 1999 UT 60, ¶ 10, 983 P.2d 556; *State v. Holland*, 921 P.2d 430 (Utah 1996). Whether the district court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law, reviewed for correctness. *Benvenuto*, 1999 UT 60 at ¶ 10, 983 P.2d 556.

## ANALYSIS

### I. EFFECTIVE ASSISTANCE OF COUNSEL

¶ 15 Defendant contends he was denied the effective assistance of counsel because Cella gave him erroneous advice, namely that his first degree felony murder conviction could be reduced to a second degree felony. Defendant now claims that he

entered his guilty plea in reliance upon this erroneous advice, and that but for the erroneous advice, he would not have pleaded guilty. The State counters that defendant was not denied the effective assistance of counsel because he cannot demonstrate prejudice under the test set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The State also contends that because defendant had the opportunity to withdraw his plea at sentencing, but consciously chose not to, he cannot meet his burden of establishing inadequate representation. The State claims defendant cannot demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

¶ 16 We apply the *Strickland* test to defendant's claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (stating "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"). Under the *Strickland* test, an individual has been denied the effective assistance of counsel if: (1) counsel's performance was deficient below an objective standard of reasonable professional judgment, and (2) counsel's performance prejudiced the defendant. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052.

¶ 17 We need not address the first prong of the *Strickland* test inasmuch as the prejudice prong is dispositive. In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Specifically, in the context of a guilty plea, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. The evidence here is to the contrary.

¶ 18 First, defendant was informed of counsel's error, and he was given the opportunity at sentencing to request that his plea be withdrawn and that he be permitted to stand trial. Defendant did not make this request. He asked instead to proceed with sentencing. Further, at the hearing on the motion to withdraw his plea, defendant declared that he "didn't want to go through a trial because [he] didn't want to put [the victim's mother] up here and go through the emotion and go through the hurt." He testified that his decision not to ask the court to withdraw his guilty plea was a conscious decision not to hurt the victim's mother by going to trial.

¶ 19 Second, despite counsel's error of not discovering the change in the law, counsel expressly testified that he still would have advised defendant to plead guilty had he known of the change in the law. In fact, defendant confirmed that he understood that "there was no question that [he was] going to go down on count one [the murder count]." Cella testified that defendant's primary concern was having the sexual abuse charge dropped, not whether the motion to reduce the conviction would succeed. Cella also testified that "there's no doubt ... that [defendant] got a better deal than he would have gotten ... if he were tried." Had counsel known the first degree conviction could not be reduced, he would not have advised defendant any differently. He still would have advised defendant to plead guilty.

¶ 20 The district court found that defendant had not demonstrated a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial. The district court's findings of fact are well supported by the record and therefore are not clearly erroneous. In sum, the district court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

## II. KNOWING AND VOLUNTARY PLEA

¶ 21 Defendant also claims his plea was not knowing and voluntary because the district court, according to defendant, did not comply with the requirements for entry of a guilty plea under rule 11 of the Utah Rules of Criminal Procedure. Defendant argues the court failed to establish that he knowing-

ly waived his constitutional rights. He also claims that the district court failed to establish that he understood the elements of the crime, and because of this failure, he did not possess an understanding of the law in relation to the facts, and his plea was therefore not knowing and voluntary. The State counters that the plea was knowing and voluntary because the district court strictly complied with rule 11, and strict compliance creates a presumption that the plea was voluntary. The State points out that defendant knew the possible penalties for murder and that the court was not bound by any sentencing recommendations.

¶ 22 It is well established that "[s]trict compliance with rule 11(e) creates a presumption that the plea was voluntarily entered." *State v. Gamblin*, 2000 UT 44, ¶ 11, 1 P.3d 1108. While we describe the court's duty as one of "strict" compliance, the strict compliance requirement "does not mandate a particular script or rote recitation of the rights listed." *State v. Visser*, 2000 UT 88, ¶ 11, 408 Utah Adv. Rep. 9, 22 P.3d 1242. The purpose of rule 11 is to ensure that a defendant knows of his or her rights and thereby understands the consequences of a decision to plead guilty. *See id.*

¶ 23 In this case the district court strictly complied with rule 11(e). Defendant was informed of and acknowledged that he understood his rights. Defendant had counsel appointed. With counsel present, the court informed defendant of, and defendant acknowledged that he understood, the following: the possible penalties for murder, the right against compulsory self-incrimination, the right to a jury trial, the State's burden at trial, the right to the presumption of innocence, the right to confront and cross-examine witnesses, the right to compel the attendance of defense witnesses at the State's expense, and the right to testify. Defendant also acknowledged that he understood that by pleading guilty he was waiving these rights, and that on appeal he would be able to challenge only whether his plea was knowing and voluntary. The court informed defendant of the time limits for filing a motion to withdraw his plea. The court also explained to defendant that by pleading guilty

there would be no trial and that defendant would be relieving the State of the burden to prove defendant's guilt beyond a reasonable doubt because defendant would be admitting to murder.

¶ 24 Defendant also understood the elements of murder, the alleged facts that supported the charge, and the consequences of pleading guilty. The court clearly set forth the nature and elements of the offense of murder and explained to defendant what the State would have to prove in order to convict him. When asked by the court if he shook and injured the victim, causing his death, defendant responded affirmatively. Defendant's affidavit further evidences that he understood the elements of the crime in relation to the facts of his case. In his affidavit, defendant acknowledged that he endangered the victim's life, intended to cause serious bodily injury, violently shook the victim, did so intentionally and knowingly, and caused the victim's death. Defendant also acknowledged in his affidavit that he was "entering this plea voluntarily and with knowledge and understanding that [he was] waiving certain constitutional rights." He acknowledged that he understood that by pleading guilty he was admitting to the elements the State had to prove. Even further, his attorney testified at the hearing on the motion to withdraw defendant's plea that he thought defendant had a clear understanding of the elements and nature of the offense of murder as well as the consequences of pleading guilty to that charge.

¶ 25 In sum, the district court satisfied the requirements of rule 11, and defendant, both in colloquy with the court and by affidavit, clearly acknowledged that the plea was not influenced by threats, promises, or coercion. Defendant possessed an understanding of the elements of murder in relation to the facts, which he admitted to, both in open court and in his affidavit. The district court did not err in determining defendant's plea was knowing and voluntary.

## CONCLUSION

¶ 26 The district court's denial of defendant's motion to withdraw his guilty plea is affirmed. The court did not abuse its discre-

tion in denying the motion, and the court strictly complied with the constitutional and procedural requirements for entry of defendant's guilty plea.

¶ 27 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice DURRANT concur in Justice WILKINS' opinion.