2013 UT App 274

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Wolfgango RUIZ, Defendant and Appellant.**

**No. 20071003–CA.**

Court of Appeals of Utah.

Nov. 21, 2013.

Hakeem Ishola and Aaron Tarin, Attorneys for Appellant.

John E. Swallow and Laura B. Dupaix, Attorneys for Appellee.

Judge GREGORY K. ORME authored this Opinion, in which Judges JAMES Z. DAVIS and MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶ 1 Defendant Wolfgango Ruiz appeals the district court's denial, on reconsideration, of his motion to withdraw his guilty plea to a charge of attempted sexual abuse of a child, a third degree felony. *See* Utah Code Ann. § 76–5–401 (LexisNexis 2012).[1] We affirm.

## BACKGROUND[2]

¶ 2 In 2006, Defendant was charged with sexual abuse of a child, a second degree felony. Defendant retained counsel and then pled guilty to a reduced count of attempted sexual abuse of a child, a third degree felony. *State v. Ruiz*, 2009 UT App 121, ¶ 2, 210 P.3d 955, *rev'd*, 2012 UT 29, 282 P.3d 998. "The written plea agreement executed by [Defendant] indicated that he knew the potential sentence was a term of zero to five years in prison." *Id.*

¶ 3 Two months after pleading guilty, Defendant retained new counsel. *Id.* ¶ 3. "His

---

1. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code as a convenience to the reader.

2. Defendant is before us for a second time on this appeal. Our recitation of the relevant facts draws extensively from our prior opinion, *State v. Ruiz*, 2009 UT App 121, 210 P.3d 955, *rev'd*, 2012 UT 29, 282 P.3d 998.

new attorney filed a motion to withdraw [Defendant's] guilty plea, alleging that former counsel's ineffectiveness rendered the plea involuntary." *Id.* Defendant alleged "that his former counsel misled him into believing that the original second degree felony he was facing required a minimum mandatory sentence of five years," *id.*, while the actual sentence was an indeterminate sentence of one to fifteen years, *see* Utah Code Ann. § 76-3-203(2) (LexisNexis 2012), and that he entered a guilty plea to the third degree felony only because his then-counsel told him he might thereby avoid jail time, *Ruiz*, 2009 UT App 121, ¶ 3, 210 P.3d 955. Defendant, a Venezuelan native in this country illegally, also "alleged that his former counsel dissuaded him from seeking the advice of an immigration attorney before he pled guilty," telling him the plea would not lead to his deportation. *Id.*

¶ 4 Judge Fuchs, the district court judge originally assigned to this case, "ruled that [Defendant's] former counsel misadvised him of the immigration consequences of his guilty plea and that this was a legitimate basis for withdrawing" the plea. *Id.* ¶ 4. At the hearing on the motion, the State asked for additional time to present testimony from Defendant's former counsel, but the request was denied. *See id.*

¶ 5 "The State filed a motion to reconsider in which it claimed that the prosecutor had spoken to [Defendant's] former counsel, who denied misrepresenting the immigration consequences of the guilty plea." *Id.* ¶ 5. "Defendant opposed the motion, arguing that the State had been given several opportunities to present evidence to counter Defendant's affidavit but failed to do so." *Id.* ¶ 6. Judge Fuchs "set a hearing on the motion to reconsider but retired before the hearing was held." *Id.* "Judge Skanchy was then assigned to the case." *Id.*

¶ 6 Over Defendant's objection, Judge Skanchy heard Defendant's former counsel's testimony. *Id.* ¶ 7. Former counsel testified that he and Defendant discussed the immigration consequences of the plea numerous times, that they discussed "immigration from day one," and that he consistently told Defendant that "he would almost certainly be deported" if he pled guilty. *Id.* ¶ 8. Former counsel also testified that he discussed the ramifications of sentencing with Defendant, "telling him that if he were convicted of a third degree felony that he's looking at zero to five" and that if convicted of a second degree felony at trial, he would "normally certainly do at least five years in prison." Based on this testimony, Judge Skanchy concluded that former counsel had rebutted "the self-serving allegations set forth in [Defendant's] affidavit." Judge Skanchy "granted the motion to reconsider, rescinded Judge Fuchs's order granting the motion to withdraw the guilty plea, and denied [Defendant's] motion to withdraw his guilty plea." *Id.*

¶ 7 In denying Defendant's motion to withdraw his guilty plea, Judge Skanchy concluded that Defendant's former counsel "did inform him about sentencing possibilities, including incarceration and deportation," "did not affirmatively misrepresent immigration or incarceration consequences," "gave [some] erroneous information to [Defendant,] but ... it did not [rise] to the level of ineffective assistance of counsel," and did not "exaggerate the benefit of [the] proposed plea disposition." Judge Skanchy finally noted that Defendant's plea was thus "knowing and voluntary and that 'good cause' does not exist for a withdrawal of that plea." Defendant was then sentenced to a prison term of up to five years, which was suspended in favor of 365 days in jail and thirty-six months probation. He timely appealed Judge Skanchy's ruling. *See id.* ¶ 9.

¶ 8 In the first round of this appeal, Defendant argued that the "law of the case" doctrine prohibited Judge Skanchy from reconsidering Judge Fuchs's ruling that the State could not present the first attorney's testimony to rebut Defendant's affidavit. *Id. See generally IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶¶ 26–27, 196 P.3d 588 (explaining that "under the law of the case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation") (citation and internal quotation marks omitted). In rejecting this argument, we explained that the law of the case "doctrine [does] not pre-

vent a different judge from revisiting an interim order issued in a case by a prior judge because ... the two judges, while different persons, constitute a single judicial office for law of the case purposes." *Ruiz,* 2009 UT App 121, ¶ 10, 210 P.3d 955 (citations and internal quotation marks omitted).

¶ 9 After concluding that Judge Skanchy had authority to revisit Judge Fuchs's ruling, we noted that Judge Skanchy had not articulated the basis for his decision to allow the State to present the first attorney's testimony, contrary to Judge Fuchs's ruling. *Id.* ¶ 14. Then, after citing opinions from the Utah Supreme Court stating that presentence motions to withdraw guilty pleas should, in general, be liberally granted, we explained that "[a]bsent such explanation on the record, we [had] no assurance that the change was not merely a function of personal preference on Judge Skanchy's part." *Id.* ¶¶ 11, 14. Based on this concern, we vacated the ruling and reinstated the prior order permitting Defendant to withdraw his plea. *Id.* ¶ 15.

¶ 10 After we issued an amended opinion further explaining the continued vitality, as we saw it, of the "liberally granted" standard, the State filed a petition for certiorari that the Utah Supreme Court granted so that it could determine "(1) whether the ... decision to vacate Judge Skanchy's ruling was erroneous and (2) whether the principle that presentence motions to withdraw guilty pleas should be liberally granted remains good law after recent changes to the Plea Withdrawal Statute." *State v. Ruiz,* 2012 UT 29, ¶ 21, 282 P.3d 998. The Utah Supreme Court rejected our analysis on both counts.

¶ 11 The Court concluded that the basis for Judge Skanchy's decision to reconsider was apparent from the record and that this court erred by vacating Judge Skanchy's grant of the State's motion to reconsider. *Id.* ¶ 22. The Court then concluded that because of recent statutory changes, judges are no longer obliged to "liberally grant" motions to withdraw guilty pleas. *Id.* ¶¶ 37–38. Rather, the Utah Code "now requires a finding that the defendant's plea was not knowingly and voluntarily entered before a motion to

withdraw can be granted." *Id.* ¶ 30. *See also* Utah Code Ann. § 77–13–6(2)(a) (Lexis-Nexis 2012). The Court then sent the case back to us "to consider any other issues [Defendant] has properly raised." *Ruiz,* 2012 UT 29, ¶ 38, 282 P.3d 998. We now turn to that task.

## ISSUE AND STANDARD OF REVIEW

¶ 12 Defendant argues that Judge Skanchy erred when he denied, on reconsideration, Defendant's motion to withdraw his guilty plea. We review the denial of a motion to withdraw a guilty plea under an abuse of discretion standard, disturbing the findings of fact made in conjunction with that decision only if they are clearly erroneous. *State v. Beckstead,* 2006 UT 42, ¶ 7, 140 P.3d 1288; *State v. Benvenuto,* 1999 UT 60, ¶ 10, 983 P.2d 556.

## ANALYSIS

¶ 13 As the Utah Supreme Court instructed in its opinion, the current plea withdrawal statute requires that before his motion to withdraw a guilty plea can be granted, Defendant must show that his plea was "not knowingly and voluntarily entered." *State v. Ruiz,* 2012 UT 29, ¶ 30, 282 P.3d 998. *See* Utah Code Ann. § 77–13–6(2)(a) (LexisNexis 2012). Defendant challenges his plea as unknowing and involuntary based on two ineffective assistance of counsel claims.

¶ 14 To review Defendant's claims of ineffective assistance of counsel, we use the two-prong test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (holding that the *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel"). First, Defendant bears the burden of showing that his prior counsel's performance "fell below an objective standard of reasonableness," i.e., that it fell below a standard of "reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. In evaluating counsel's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reason-

able professional assistance." *Id.* at 689, 104 S.Ct. 2052. Second, Defendant must show that he was prejudiced by the deficient performance. *See id.* at 687, 104 S.Ct. 2052.

¶ 15 Defendant asserts that his plea was unknowing and involuntary because his prior counsel (1) exaggerated the benefit of the proposed plea by incorrectly instructing him that he faced a "minimum mandatory sentence of five years" if convicted of the original second degree felony charge, when the potential sentence was actually an indeterminate term of one to fifteen years imprisonment and (2) offered deficient advice on the immigration consequences of his guilty plea.

### I. Defendant's Counsel Did Not Exaggerate His Potential Prison Sentence.

¶ 16 Defendant argues that his former counsel incorrectly instructed him that a plea would help him avoid "the consequences of a minimum mandatory five-year prison term under the original second degree felony charge," when no minimum mandatory sentence in fact applied. *See* Utah Code Ann. § 76–3–203(2) (LexisNexis 2012) (stating that the sentence for a second degree felony is an indeterminate term of one to fifteen years). However, this characterization of former counsel's advice is problematic in light of Judge Skanchy's specific findings to the contrary, which credited former counsel's testimony over that of Defendant. Former counsel testified that he "knew that a Second Degree felony carried a one to fifteen year incarceration" but advised Defendant that, in his opinion, "he would serve a minimum of 'five years in prison' if he were to take the matter to trial" and be convicted. In fact, in considering former counsel's testimony that he told Defendant that "he would normally certainly do at least five years in prison," Judge Skanchy noted that this was "the practical extent of an indeterminate sentence."

■■■ ¶ 17 We do not overturn the district court's factual findings supporting a denial of a motion to withdraw unless they are clearly erroneous. *See State v. Beckstead,* 2006 UT 42, ¶ 7, 140 P.3d 1288; *State v. Benvenuto,* 1999 UT 60, ¶ 10, 983 P.2d 556. And because Defendant has "made no attempt to marshal the evidence supporting the trial court's decision and demonstrate that such evidence is insufficient to support the court's findings of fact, we accept the trial court's findings as stated in its ruling." *See Benvenuto,* 1999 UT 60, ¶ 13, 983 P.2d 556. Given Judge Skanchy's findings that former counsel advised Defendant about the practical effect of an indeterminate sentence upon conviction of a second degree felony, the advice provided to Defendant—which properly informed him of his likely period of incarceration—actually rendered his plea more knowing and voluntary than it would otherwise have been, and thus falls squarely within the realm of "professionally competent assistance." [3] *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

■■■ ¶ 18 This conclusion is bolstered by the provisions of rule 11(e) of the Utah Rules of Criminal Procedure, which "require[ ] that the defendant be fully informed of his constitutional rights" with respect to a plea. *See State v. Ruiz,* 2012 UT 29, ¶ 31, 282 P.3d 998 (noting the purpose of rule 11). Rule 11 mandates that a defendant know the maximum and minimum sentence, and the minimum mandatory sentence, if any, "that may be imposed for each offense *to which a plea is entered.*" Utah R.Crim. P. 11(e)(5) (emphasis added). Thus, rule 11, by its terms, only requires that Defendant be fully informed of the consequences of the third degree felony, the offense to which his plea was entered. On its face, this rule does not require that Defendant be fully informed regarding the minimum and maximum sentences to charges that the guilty plea avoids. Indeed, the Utah Supreme Court has held that a defendant must have a complete understanding of the charge in order for his plea to stand, meaning that "the defendant understood the 'critical' or 'essential' elements *of the crime to which he pled guilty.*"

---

**3.** Because we conclude that trial counsel's advice was not deficient, we do not reach the prejudice prong of *Strickland. See State v. Mecham,* 2000 UT App 247, ¶ 21, 9 P.3d 777 ("[B]ecause a defendant has the burden of meeting both parts of the *Strickland* test, it is unnecessary for this court to apply both parts where our inquiry reveals that one of its parts is not satisfied.") (alteration in original) (citation and internal quotation marks omitted).

*State v. Alexander*, 2012 UT 27, ¶ 30, 279 P.3d 371 (emphasis added) (footnote citations omitted). Here, it is clear that former counsel informed Defendant that he was "looking at zero to five" if he pled guilty to the third degree felony and that "under the arrangement to which he pleaded," "there was a possibility" that he would do zero time. Thus, even if Defendant was misinformed as to the sentence for a second degree felony, he still knowingly and voluntarily entered his plea to the third degree felony.

¶ 19 Finally, Defendant relies on several federal circuit court cases holding that, in his words, when the "maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject." *See, e.g., Pitts v. United States*, 763 F.2d 197, 201 (6th Cir.1985). However, as the State correctly notes, Defendant was properly informed that the maximum possible exposure he faced if convicted of the second degree charge was fifteen years, and former counsel's advice that he was likely to serve five years of a one to fifteen year indeterminate sentence did not overstate the maximum possible exposure of the second degree charge. Therefore, because former counsel rendered accurate advice about the practical effect of Defendant's possible sentence and because that advice complied with the requirements of rule 11, Defendant's plea was knowing and voluntary as to its incarceration consequences.

## II. Defendant Was Adequately Informed of the Immigration Consequences of His Plea.

¶ 20 Defendant next contends that his trial counsel failed to adequately inform him of the immigration consequences of his guilty plea under both Utah's traditional collateral consequences rule, articulated in *State v. Rojas–Martinez*, 2005 UT 86, 125 P.3d 930, and under the United States Supreme Court case of *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).[4]

4. The parties debate whether *Padilla* applies to this case, as Defendant urges. For purposes of this opinion, we assume—without deciding—that it does, although the proposition is doubtful. *See generally Chaidez v. United States*, — U.S. —,

¶ 21 In *Rojas–Martinez*, the Utah Supreme Court addressed the issue of when an attorney's immigration advice, or lack thereof, satisfies the two-part *Strickland* test. *See* 2005 UT 86, ¶ 10, 125 P.3d 930. *See also Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (determining an attorney's performance is ineffective if it is both deficient, "because it falls below an objective standard of reasonableness," and prejudicial). The *Rojas–Martinez* court held that "deportation is a collateral consequence of the criminal process [but] that defense counsel's failure to advise a defendant about all possible deportation consequences does not amount to ineffective assistance of counsel." 2005 UT 86, ¶ 20, 125 P.3d 930. The Court then adopted the affirmative misrepresentation exception to the collateral consequence rule to cover the situation "when attorneys affirmatively misrepresent the deportation consequences of a guilty plea." *Id.* This exception, the Court noted, requires the counseling attorney to "identif[y] the existence and degree of risk that the guilty plea will cause the sanction to be visited on the client." *Id.* ¶ 28. The Court then held that the immigration advice of trial counsel in that case, which understated the immigration consequences of the defendant's plea by giving him fifty-fifty odds in the face of almost certain deportation, nonetheless "impart[ed] more than enough gravity to the risk of deportation." *Id.* ¶ 30.

¶ 22 Several years later, in *Padilla*, the United States Supreme Court also considered *Strickland*'s requirements in the context of defense counsel's obligation to inform a defendant of possible deportation consequences of pleading guilty. 559 U.S. at 364–65, 130 S.Ct. 1473. The *Padilla* court held that to satisfy the Sixth Amendment right to effective assistance of counsel, defense "counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374, 130 S.Ct. 1473. Notably, however, the *Padilla*

133 S.Ct. 1103, 1113, 185 L.Ed.2d 149 (2013) (holding that "defendants whose convictions became final prior to *Padilla* ... cannot benefit from its holding").

court added that "[i]mmigration law can be complex" and criminal defense attorneys "may not be well versed in it." *Id.* at 369, 130 S.Ct. 1473. Thus, as we noted in *Jelashovic v. State*, 2012 UT App 220, 285 P.3d 14, "*Padilla* requires only that the risks be expressed—not that they be expressed in any particular detail or by an attorney with any particular expertise." *Id.* ¶ 10. *See Padilla*, 559 U.S. at 369, 130 S.Ct. 1473 ("When the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.").

■ ¶ 23 Applying either *Rojas–Martinez* or *Padilla*, we reach the conclusion that former counsel's advice to Defendant that he would "almost certainly" be deported if he did not plead guilty to the reduced charge imparted, under the circumstances, "more than enough gravity to the risk of deportation," *Rojas–Martinez*, 2005 UT 86, ¶ 30, 125 P.3d 930, and thus also met the low bar of *Padilla* requiring that counsel "inform [his] client whether his plea carries a risk of deportation," 559 U.S. at 374, 130 S.Ct. 1473. Significantly, the district court found that

> during the course of his representation [former counsel] told his client that he may not face deportation as a result of his plea to a Third Degree Attempted Abuse Of A Child but that "could be a possibility." He indicated that he told his client a second degree felony conviction would "certainly trigger deportation."

Given this specific finding, we see no error in the district court's conclusion that former counsel fulfilled his duty of affirmatively informing Defendant that there could well be

immigration consequences to his decision to plead or go to trial. Defendant does not challenge the district court's factual findings but instead argues that his former counsel's overstatement of the risk of deportation "distorted [Defendant's] incentive to proceed to trial." The district court was satisfied, however, that former counsel adequately informed Defendant of the deportation risks of his guilty plea. And Judge Skanchy's factual findings have not been shown to be clearly erroneous. *See Jelashovic*, 2012 UT App 220, ¶ 10, 285 P.3d 14. Thus, former counsel's immigration advice that Defendant would almost certainly be deported if he proceeded to trial and was convicted, but *may not be* if he accepted the plea deal offered to him, did not fall below "an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.[5]

## CONCLUSION

¶ 24 Given Judge Skanchy's findings of fact and, in particular, his crediting of former counsel's testimony, we hold that trial counsel's performance in advising Defendant on the incarceration and immigration consequences of his guilty plea did not fall below "an objective standard of reasonableness," *see id.*, regardless of whether *Padilla* applies, because Defendant was adequately informed of the potential incarceration and immigration consequences of his plea. Therefore, Defendant's guilty plea was knowing and voluntary, and Judge Skanchy's denial of Defendant's motion to withdraw his plea is affirmed.

**5.** If *Padilla* applies, *see supra* note 4, and if Defendant's plea were found to be unknowing and involuntary, he would also need to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances" in order for his argument to succeed under *Padilla*. *See* 559 U.S. at 372, 130 S.Ct. 1473. While Defendant argues that it is possible to remain in the country and obtain a green card notwithstanding a second degree felony conviction, considering the apparent remoteness of this possibility it may well have been irrational for Defendant to reject the plea bargain in any event.

This is especially true in light of a January 2009 United States immigration court order referred to by the parties that, as explained by the parties, appears to grant Defendant the opportunity to remain in the United States indefinitely after his guilty plea to a third degree felony, subject only to conditions such as obtaining gainful employment and not having contact with minors. Defendant has thus far avoided prison as well as deportation. To wager all and proceed to trial on the original second degree felony charge seems risky, at best.